T. J. FREEMAN, RECEIVER ET AL. v. JAMES R. TAYLOR.

Decided May 25, 1910.

**1.—Evidence—Market Value—Opinion.**

Evidence considered and held sufficient to qualify witnesses to give their opinion as to the market value of a shetland pony killed by a train.

**2.—Same—Value Fixed by Sales.**

The sufficiency of evidence to show the qualification of a witness to testify as to market value depends on the state of the market as to the thing testified about. Where this can be shown by daily sales in open market at the place in question and the price fluctuates from day to day the witness must know the definite price so fixed at the day and time. Yet articles may have a market value, in the sense that purchasers could be found for them at such value, though sales were very infrequent, and upon this value a witness may

be qualified to give an opinion though he knows of no sales at or near the time inquired about.

**3.—Ownership—Child's Saddle Pony.**

The evidence is here held sufficient to support a finding in favor of plaintiff as owner of a saddle pony killed by a railway train, though he was shown to have bought it for the use of his eight year old son and the child frequently referred to it as his pony.

**4.—Motion for New Trial—Misconduct of Jury.**

No error appeared in refusing a new trial on the ground that the jury arrived at the amount of damages by lot, where the affidavit to that effect, filed on the day the motion was overruled, was not referred to in the motion nor made to appear in the statement of facts or bill of exceptions, nor shown to have been called to the attention of the court or even to have been on file when he acted on the motion.

**5.—Same—Affidavit—Verdict.**

A claim that the jury improperly arrived at the amount of damages by each setting down the amount he favored, dividing the sum by the number of jurors and accepting the quotient as their award, was not supported, though a juror made affidavit to such facts, where the verdict rendered was not for the amount stated in the affidavit to have been so reached, but for less.

Appeal from the County Court of Falls County. Tried below before Hon. W. E. Hunnicutt.

*Prentice Altorf*, for appellant.

*Tom. Connolly*, for appellee.

JENKINS, ASSOCIATE JUSTICE.—Appellee brought this suit for damages for the killing of a shetland mare by being run over by the engine and cars of the I. & G. N. R. R. Co., of which T. J. Freeman is receiver. Appellee recovered judgment for $120, from which judgment appellants have appealed and assign as error:

I. That the court erred in permitting the witnesses George Lenoir and Wiley Davis to testify as to the market value of said animal, the objection being that they did not qualify themselves as witnesses in this behalf. Each of said witnesses on his direct examination stated that he knew the animal killed and knew her market value. The said witness Lenoir on his voir dire examination stated that he had no personal knowledge of any sales of shetland ponies having been made in or around Marlin or Rionel last fall. Rionel was a station near which the animal was killed. He stated that he knew the market value of the animal killed from what Taylor told him as to the price he had obtained for one or two colts that he had sold previous to that time, and further that he knew said market value from what other horses sold for around Marlin. He further stated that Taylor had left the mare in his charge; that she was a good animal, had brought several fine colts and had been bred four or five months previous to her death to a shetland stallion. The testified that the market value of the animal killed was $150. The witness Davis stated that he thought he knew the market value of shetland ponies on or about October 15th, 1908, the date said animal was killed; that he knew of no sales of shetland ponies having been made last fall, and based

his testimony as to market value upon what he knew and had heard as to the sales of shetland ponies this spring. He testified that the mare in question was worth on the market at the time she was killed $125.

As to whether or not a witness shows himself competent to testify as to market value must necessarily depend upon the state of the market with reference to the thing testified about. There are some articles of commerce, cotton, for instance, where the exact market value can be shown by sales in the open market for each day in the year and for different times of the day. In such cases the witness should qualify himself to speak as to the market value at the exact time alleged. It is a well known fact that cotton and other articles of commerce fluctuate very much in their values from day to day. These articles being sold in open markets, their exact values can be fixed at any particular time by market reports. The same is true, in a limited sense, of beef cattle, mules and work horses in many places. But this necessarily can not be true as to such stock as have a market value, in the sense that purchasers can be found for them in the market, yet their sales are very infrequent. In such cases market value must, necessarily, be a matter of opinion. Of course, a witness must show himself qualified to give an opinion before his testimony is admissible, but we think he may do so in many cases although he knows of no sales at or near the time inquired about. In this case both of the witnesses were acquainted with the animal killed; they lived in the neighborhood; they knew, in a general way, of the prices of horses in that neighborhood, and the prices at which shetland ponies had been sold prior and subsequent to the time the animal in question was killed. One of the witnesses had charge of this shetland pony, and the other was the owner of a shetland pony. We think the court held correctly that they were qualified to testify as to the value of the animal killed. See Gulf C. & S. F. Ry. Co. v. Peacock (128 S. W., 463), decided at the present term of the court, and not yet officially reported.

II. Appellants assign as error the overruling of their motion for a new trial on the ground that ownership was not proven, as alleged. The evidence upon this point was: George Lenoir, brother-in-law of the plaintiff, testified that plaintiff owned the mare and had left her with him upon his removal to Dallas. Upon cross-examination he stated that plaintiff bought this pony for his little son four years ago. The boy was now eight years old and was with his parents in Dallas; that the boy had used the mare frequently and referred to her as his mare; and the witness further stated: "I really don't know whether she belonged to Mr. Taylor or his son." It was further shown that Taylor had bred the mare a few months before she was killed; had paid for her breeding and exercised the usual evidences of ownership over her, including leaving her in charge of Lenoir to take care of for him. At the request of appellee the court submitted the question of ownership in a special charge. The jury having found in favor of appellee, we can not say that the evidence does not support the verdict. It does not prove that the child is the owner of the pony because the father had said that he had purchased it for him. This may mean

no more than that he had purchased the animal for the use and pleasure of his child, and such, perhaps, is usually the case. Nor does it prove ownership that the child claimed such pony as his own. It is well known that children are prone to claim property that belongs to their parents.

III.  Appellants assign error on the refusal of the court to grant a new trial on the ground that the verdict of the jury was arrived at by lot. Motion for new trial was filed in this case on May 21, 1909. On the following day the motion was overruled. One of the grounds set up in the motion for new trial was that the verdict was arrived at by lot. On May 22d, an affidavit of one of the jurors was filed herein as follows: "After being out for sometime without being able to reach an agreement on the amount to be awarded to plaintiff against defendant receiver, the jury agreed among themselves that the amount each was willing to find for should be added up, and then the total amount thus summed up to be divided by the number of jurors, which was five, a full panel having been waived by the parties to the suit, and the result or quotient should be their verdict; that the amount favored ranged from $100 to $135, one being for $100, two for $125, one for $130, and one for $135. The agreement as above set forth was carried out, and the result of the division was $120, which was accordingly returned as the verdict, in accord with such previous agreement." This affidavit was not referred to in the motion for new trial, it does not appear in the statement of facts, nor in any bill of exceptions. It does not appear that it was ever called to the attention of the court, nor, indeed, that it was on file when the motion for new trial was overruled. Under such circumstances, we do not think that this affidavit could be considered for the purpose of impeaching the verdict of the jury. However this may be, the affidavit shows upon its face that it is not true. The juror states that the five jurors each set down the respective amounts as shown in said affidavit, added the same together and divided by five and agreed that the result should be their verdict, but the quotient of such division would be $123, and the verdict was for $120.

Finding no error in the record, the judgment of the court below is affirmed.

<em>Affirmed.</em>