### ED. J. HAMNER v. B. N. GARRETT ET AL.

#### Decided December 3, 1910.

**1.—Injunction—Appeal—Limitation as to Time—Statute Construed.**

Under the provisions of the Act of 1909 (Gen. Laws, 1909, page 354), the limitation of 15 days within which to file the transcript in a Court of Civil Appeals in an appeal from an order of a trial court granting, refusing or dissolving an injunction, applies only to temporary writs of injunction, and does not embrace or attempt to control appeals from the final judgment entered in the cause, even though such judgment incidentally determines the right to an injunction. Said Act neither grants nor regulates the right of appeal from final judgments in injunction cases. Hence, when the dissolution of an injunction is a part of a final judgment, the transcript for appeal need not be filed in the appellate court within 15 days after the entry of the judgment; nor is such cause entitled to be advanced on the docket of the appellate court.

**2.—Same—Prevention of Multiplicity of Suits.**

The District Courts in this State may issue injunctions to prevent a multiplicity of suits; but this rule applies only in cases in which the multiplied suits sought to be enjoined had been instituted or were threatened by persons claiming in a single right separate causes of action arising from the same source.

**3.—Same.**

The mere fact that numerous parties hold separate instruments upon which there might be separate suits, is not sufficient to justify a court of equity in entertaining an action by the debtor to compel such parties to litigate their claims collectively in a forum which he selects but which would not have jurisdiction of the claims separately; and this, even though the validity of all said instruments is attacked upon a common ground.

**4.—Same—Pleading—Insufficient Equity.**

In an action instituted against a number of defendants seeking the construction of certain contracts concerning the sale of land, and the adjustment of the pecuniary liability among the several parties growing out of such contracts, and praying a writ of injunction restraining the defendants from the commission of certain acts therein complained of, petition considered, and held subject to general demurrer.

**5.—Same—Discovery—Statute.**

Because of the provisions of article 2293, Revised Statutes, giving either party to a suit the right to propound interrogatories to the adverse party, the doctrine of discovery has no application under our system of procedure, and is not sufficient ground for the interposition of a court of equity by injunction.

Appeal from the District Court of Mitchell County. Tried below before Hon. Jas. L. Shepherd.

*Edward J. Hamner, pro se,* and *Stephens & Miller,* for appellant.— Where the petition disclosed that the defendants were about to avail

themselves of their right to bring separate suits in order to harass plaintiff by a multiplicity of suits to which the petition showed a perfect defense, against which there was no adequate protection except by injunction, then injunction is the proper remedy to prevent the bringing and prosecution of such suits.   Galveston, H. & S. A. Ry. Co. v. Dowe, 70 Texas, 5-6; Aimee Realty Company v. Haller, 106 S. W., 589; St. Louis S. W. Ry. Co. v. Moss, 28 S. W., 1038.

Discovery is the proper remedy to ascertain the facts necessary for the prosecution or defense of a private fight.   1 Pom. Eq. (1st ed.), secs. 142-144, 162, 191-209.

*W. B. Crockett* and *F. G. Thurmond,* for appellees.—The District Court has no authority or jurisdiction to restrain parties from bringing suits in the Justice and County Courts of this State, on the ground that the amounts involved in such suits are too small to allow an appeal to the Courts of Civil Appeals and the Supreme Court, and because such suits are expensive to the defendant in the same.   Odom v. McMahan, 67 Texas, 292; Gulf, C. & S. F. Ry. Co. v. Henderson, 83 Texas, 72; St. Louis, I. M. & S. Ry. Co. v. Coca Cola Co., 32 Texas Civ. App., 612; Raines v. Reasonover, 46 Texas Civ. App., 290; Jennings v. Munden, 46 Texas Civ. App., 520.

Injunction is not the proper practice for discovery as sought herein, but interrogatories propounded for this purpose.   Sayles' Rev. Stats., arts. 2271-2293.

The courts will not enjoin persons not named as parties to the suit in a petition for injunction, because such unnamed persons are entitled to be heard on the grounds for injunction.   Watkins Land Co. v. Clements, 86 S. W., 735.

SPEER, ASSOCIATE JUSTICE.—*On appellees' motion to advance and dismiss.*—On July 2d at the last term we refused appellee's motion to advance this cause and dismiss the appeal.   In view of the importance of the question involved, it being entirely new so far as our search of the authorities has disclosed, and of the earnest insistence of the appellees that we erred in our former order, we have again carefully considered the motion.

The question presented involves the interpretation of the Act of the Thirty-first Legislature relating to injunctions (Acts 1909, p. 354) and especially of section 2 of that Act.   The action is one instituted by Ed. J. Hamner against a number of defendants seeking the construction of certain contracts and the adjustment of the pecuniary liability among the several parties growing out of such contracts and craving a writ of injunction restraining the defendants from the commission of certain acts therein complained of.   On January 20, 1910, during a regular term of the District Court of Mitchell County, the cause was regularly reached and called for trial and a final judgment entered.   This judgment, among other things, ordered that the defend-

ants' motion to dissolve the preliminary injunction previously granted and the general demurrer to plaintiffs' petition should be sustained, and the suit as to said defendants was dismissed. To this judgment and order of the court the plaintiff excepted and gave notice of appeal to this court, and an order was made granting him thirty days after adjournment in which to prepare and file statement of facts and bills of exceptions. On January 31st the plaintiff filed his appeal bond, and on February 8th the transcript of the proceedings was filed in this court. It is the contention of appellees that the transcript should have been filed within fifteen days after the entry of the judgment dissolving the injunction.

The Act of the Thirty-first Legislature, already referred to, is an amendment of Sayles' Texas Civil Statutes, article 2989, and perhaps at present constitutes the only express authority conferred upon judges of the District and County Courts to grant writs of injunction generally. Section 1 of that Act amends article 2989 proper, while section 2, amending section 2 of chapter 107 of the Acts of the Thirtieth Legislature, provides for an appeal and is as follows:

"Any party or parties to any civil suit wherein a temporary injunction may be granted, refused or dissolved under any of the provisions of this title in term time or in vacation, may appeal from the order or judgment granting, refusing or dissolving such injunction, to the Court of Civil Appeals having jurisdiction of the case; but such appeal shall not have the effect to suspend the enforcement of the order appealed from unless it shall be so ordered by the court or judge who enters the order; provided, the transcript in such case shall be filed with the clerk of the Court of Civil Appeals not later than fifteen days after the entry of record of such order or judgment granting, refusing or dissolving such injunction."

Section 3 provides that it shall not be necessary to brief such case in the Court of Civil Appeals or Supreme Court, but that the case may be heard on the bill and answer and such affidavits and evidence as may have been admitted by the judge granting, refusing or dissolving the injunction. Section 4 declares that such case shall be advanced in the Court of Civil Appeals or Supreme Court on motion of either party, while section 5 repeals all laws and parts of laws in conflict with the Act.

It will be noticed from our statement that this appeal is from a final judgment entered in the cause in term time, and not from an interlocutory order dissolving the writ of injunction. The question, then, is: Do the provisions of the Act under consideration apply to this character of case? If they do, the case of C. B. Livestock Co. v. Parrish, 59 Texas Civ. App., 386 (127 S. W., 854), by this court, determines appellees' contention in their favor. We there held that this court was without jurisdiction to entertain an appeal from an interlocutory order dissolving a temporary writ of injunction where the transcript on such appeal was not filed within fifteen days from the entry of record of such order. It is true that section 2, above quoted, authorizes an appeal

whether the order granting, refusing or dissolving the temporary writ of injunction be made in term time or in vacation; but this is not conclusive that the Act was intended to apply to all appeals in civil cases wherein writs of injunction were granted, refused or dissolved. A critical examination of the section under review will disclose that the particular order from which an appeal is authorized by the Act is that "granting, refusing or dissolving" the temporary writ of injunction, and does not in terms or by fair implication embrace or attempt to control appeals provided for by general law from the final judgment entered in the cause, even though such final judgment incidentally may determine the right to an injunction in such cause. In other words, the Act neither grants nor regulates the right of appeal from final judgments in injunction cases.

A proper way to determine the scope of the Act is to consider the evil intended to be remedied in connection with the law as it had previously existed. Prior to the Act of 1907 (General Laws of Texas, 1907, page 203), of which the one under review is an amendment, appeals were not allowed from interlocutory orders in injunction cases, but whatever the merits of the application when refused, or whatever its demerits when granted, the party injuriously affected was remitted to his slow and tedious remedy of appeal from the final judgment in the cause when the case was finally reached in the trial court. It was the purpose of the Act, then, to afford a speedy remedy by an immediate appeal from the order granting, refusing or dissolving the temporary writ, irrespective of the final determination of the merits of the cause to which the injunction was an incident, and this, too, whether the order with respect to the injunction be made in term time or in vacation. This in no way contemplates an appeal from a final judgment. This is the appeal that may be heard in the Court of Civil Appeals or Supreme Court on the bill and answer without the necessity for a brief, and this is the appeal that must be advanced in those courts on motion of either party.

To give to the Act the effect contended for by appellees would be to repeal by implication the numerous provisions of the statute regulating appeals generally as applied to injunction cases, thereby most materially abridging the rights of the parties to such suits, when the evident purpose of its framers was to enlarge the rights of such parties by conferring upon them a remedy they had previously not possessed, viz.: the right to an immediate review of that branch of their case granting, refusing or dissolving the temporary writ of injunction.

If the present appeal, then, is not embraced within the Act of the Thirty-first Legislature, appellant's right to appeal is governed by the law as it aforetime was, and his transcript has been filed in due time. The same reasoning would deny appellees' right to have the cause advanced, since it is only the cases embraced in the Act of 1909 that are required by that Act to be advanced on the dockets of this court. Aside from that Act and the one of which it is amendatory, there is no statute or rule requiring injunction cases to be advanced in the

Court of Civil Appeals. These are our reasons for refusing to dismiss the appeal or to advance the cause which appellees have so earnestly insisted should be given. Motion overruled.

CONNER, CHIEF JUSTICE.—*Opinion on the merits.*—The petition herein considered is too voluminous for insertion, but appellant thus presents his case, viz.:

"This was a suit for injunction filed in vacation, brought by the appellant, alleging substantially as follows:

"1. That on and prior to April 15, 1907, he was seized and possessed of a half section of land in Mitchell County, Texas; on which date and relative to which he and the appellee Garrett entered into a contract, by the terms of which appellant agreed to sell to Garrett said half section of land upon terms whereby Garrett was to put the land upon the market and to sell said lots at not less than the specified prices according to schedule attached, and was to receive the first $10 paid on such sale; the balance was to be deposited in the Colorado National Bank until the sum of $8,000 was paid by Garrett to appellant, when appellant was to make a deed to all of the property to Garrett or to the purchasers under his sales. In said contract Garrett bound himself that appellant would receive $5,000 by December 31, 1907, or the said contract should be abrogated; but if $5,000 was paid to appellant on or before December 31, 1907, Garrett was then to pay appellant $3,000 on or before May 1, 1908, with interest thereon; said contract being an optional executory contract of sale with said Garrett upon the terms and conditions set out in the said contract, a copy of which was attached to the petition.

"2. That after the 15th of April, 1907, and prior to June 22, 1907, Garrett offered for sale the lots on said land, and appellant alleges his belief on information that Garrett effected a few executory contracts of the sale of said lots, but that the number and the names of the purchasers, or their residence, is not known to appellant, and Garrett refuses to disclose same to him. That during said time appellant had nothing whatever to do with the sale of said lots by said Garrett.

"3. That on June 22, 1907, the appellee Garrett made and entered into a contract with the appellees Woodard, Woodard and Woodard in which the Woodards assumed three-fourths of the responsibility of the appellee Garrett under the contract with appellant, and the Woodards obligated themselves to sell the lots mentioned on the following terms: 300 of said lots were to be sold on the Oklahoma plan at $60 each, and the said Woodards were to have three-fourths of the profits accruing from said sale, and all the monies were to be deposited in the Colorado National Bank until the sum of $8,000 had been so deposited; said contract further provided that the Woodards would be allowed 25 lots to offer as premiums to the sale of the other lots under the Oklahoma plan, and that two four-room cottages were to be built and completed before the day of the drawing, and should be paid for out of the profits of the sale. Copy of that contract was attached to the petition; which

contract evidenced an agreement of partnership between appellee Garrett and the Woodards, and with which the appellant had no connection or knowledge, and did not consent or agree thereto.

"4.  At the time of the execution of this last named contract, appellee Garrett and the Woodards entered into another contract, wherein they constituted themselves a partnership under the firm name of West Colorado Land Company, for the purpose of promoting the sale of the land and town lots mentioned in the pleadings.  In this contract J. W. Woodard was named as president, and appellee Garrett was named as vice-president; R. E. Woodard, second vice-president, and J. H. Woodard, secretary and treasurer.  Copy of this contract was also attached to the pleadings.

"5.  Appellant alleged that the Oklahoma plan, mentioned in the contracts attached to said pleadings, contemplated that each purchaser did not become the holder or owner of any lot, but that each purchaser procured should receive a certificate from the appellees, by the terms of which he was entitled to an undivided interest in all of said lots proportioned to the number of lots, and that after the issue of the certificates equal to the number of lots to be conveyed, the lots should be conveyed to a trustee named by the holders of the certificates, and the ownership of each separate and particular lot should be determined by a drawing.  Upon information appellant alleges that after the 22d of June, 1907, appellees did not sell any certain and particular lots but only attempted to sell the certificates outlined, and that they did sell some certificates, the exact number of which and to whom sold, appellant is not advised, but that the appellees do know the number sold, and to whom sold, and where the purchasers reside.  That appellant had nothing whatever to do with these sales, and did not act with the appellees or either of them in making the sales and is not bound by them.

"6.  That prior to June 22, 1907, no sums of money were paid appellant or deposited for him as required by the contract, but subsequently thereto money was deposited to the credit of the Ed. J. Hamner Land Account in the Colorado National Bank, aggregating, up to the 21st day of January, 1908, the sum of $1,219.60; and that thereafter and up to February 1, 1908, the further sum of $29.70 was deposited, and that after that date, and prior to the first day of April, 1908, the further sum of $159.90 was deposited, making a total deposited to the credit of the Ed. J. Hamner Land Account in the Colorado National Bank the sum of $1,409.20.

"7.  Appellant averred that prior to January 1, 1908, neither the appellee Garrett, nor any of the other appellees, nor anyone acting for them or in their behalf, ever paid to appellant, nor did appellant ever receive, any money whatever upon his contract with Garrett, and that all of the moneys deposited in the Colorado National Bank by Garrett were deposited to the Ed. J. Hamner Land Account and so stood on January 1, 1908, and until January 21, 1908.  Wherefore, by the terms of the contract appellant had with Garrett, it was forfeited. That appellant on the 11th day of January, 1908, being advised by Gar-

rett that he could not comply with his contract and that the same should be forfeited, entered into a new contract with said Garrett after forfeiting the old contract.

"8. That under the new contract entered into January 20, 1908, Garrett paid appellant the sum of $1,219.60, deposited as aforesaid, and the further sum of $280.40, making $1,500; and thereupon appellant executed a general warranty deed conveying the land referred to in the contract for $1,500 cash and the execution of three vendor's lien notes, one due June 29, 1908, for $1,560; one due December 29, 1908, for $2,700, and another due June 1, 1909, for $2,800, which notes were placed, together with the deed, in the Colorado National Bank; and it was provided by the contract entered into between appellant and Garrett that if he failed to pay the first note to mature June 29, 1908, the appellant could recall all the papers and forfeit all payments made on said notes; that Garrett failed to make the payments on said notes, and the contract was forfeited.

"9. That when appellee Garrett failed to pay said note and the contract was forfeited, the deed was withdrawn, thereby all right and claim of the appellee Garrett or any of the other appellees to the land or any part thereof, except lots sold by Garrett prior to June 22, 1907, ceased and determined, and full and complete legal and equitable title to the land reverted and reinvested in plaintiff.

"10. That appellee Garrett, without the knowledge or consent of appellant, caused to be printed advertising literature, in effect representing that the West Colorado Land Company was a corporation of which appellant was president and Garrett was secretary and treasurer, all of which was false and was unknown to appellant until about the 21st day of May, 1907, and as soon as same was learned by appellant he immediately in writing disavowed any connection with or responsibility for such literature or the West Colorado Land Company, and demanded that Garrett cease to use his name in connection therewith, but appellant alleged that the appellee Garrett, acting and colluding with the other appellees and their various agents whose names are unknown to the appellant but are known to appellees, represented to divers and sundry persons that the West Colorado Land Company was a corporation of which appellant was president, and induced persons to believe the truth thereof, and entered into dealings with them based thereon, and sold various certificates to various persons in various parts of the State, among others, parties represented by the appellant Baughn who is an attorney, and that the said Baughn has instituted one suit against this appellant in Palo Pinto County, and is threatening to bring divers and sundry other suits against this appellant in Palo Pinto County for amounts so small that such causes can not be appealed to the Court of Civil Appeals, and it will deprive the appellant of his right to be sued in Mitchell County, Texas, and compel him at great expense, towit: more than $500, to recover which he has no adequate remedy at law, to defend many and various vexatious suits in counties other than in the county of his residence, and in which suits there will be no right of

appeal above and beyond the County Court. That appellees Garrett and Woodards, colluding with other parties, have caused to be brought against this appellant two suits in Mitchell County, Texas, and has interpleaded appellant as a partner in said West Colorado Land Company, and is seeking to hold him liable for the acts of the said appellees, with which appellant had no connection. That the amount in controversy in each of said suits is so small that the right of appeal higher than the County Court of Mitchell County, Texas, does not exist.

"11. That the appellees McCoun and Keith, represented by the appellee Leslie, have filed suits in the Justice Court against the appellees Garrett and Woodards, and name appellant as one of the partners, for $60 each; and that the appellee Sandusky threatens to bring a suit for $60 against appellant as a party; in none of which suits can appeal be had to the Court of Civil Appeals. That said suits are without foundation and untrue, and appellees are not entitled to recover therein as against appellant, but that same are brought with the intention and expectation of annoying and harassing the appellant, thinking it will compel him to pay the small amounts therein involved rather than defend the same. And other suits are threatened to be brought in similar amounts and in similar manner by said appellees' lawyers.

"12. Appellant avers that appellees and their agents and those acting under them, whose names are unknown to appellant but are known to appellees, have, in many and different parts of the State, extending from El Paso to Texarkana, and from Palo Pinto County to Travis County, sold sundry certificates on the Oklahoma plan, with which appellant has no connection, and are encouraging and advising the purchasers of said certificates to bring suit against appellant in the counties of the residence of such purchaser, and compel appellant to defend such suits at great expense or buy his peace by paying money for which he is not liable, to recover which expense appellant has no adequate remedy at law, for that the amount in controversy in each of the suits is so small that the expense of the defense in any of them would in all probability be greater than the amount involved, and said amounts are not appealable to our Court of Civil Appeals.

"13. Appellant alleges that he has at all times been, and is now able, ready and willing to stand by and abide and perform each and every provision of his contract, and offers to convey the land or any part thereof to appellees or either of them or their nominees upon being paid the purchase price according to the contract, and appellant offered to do any and all manner of equity required of him by the court. Therefore appellant prayed, for as much as he was remediless by the strict rules of the common law and is only relievable in a court of equity, that he have judgment by the court construing the nature and effect of each of the contracts pleaded; that the appellees and each of them be required to discover the names of each of the parties to whom certificates were sold, and that such purchasers be made parties hereto; and if it be determined that this appellant is liable, then appellant avers his willingness and ability to pay such sums and all of them, and he

offers to do so; and prays that he may have judgment against the appellees, jointly and severally, for such sums as may be charged against him, and for an injunction restraining the defendants, their agents, etc., from claiming or pretending or representing that appellant is or ever was a partner with them or either of them, or is liable with them; and restraining the appellees, their agents, etc., from interpleading appellant in any suit brought against them because of the sale of such certificates by them or their agents, and prohibiting them from aiding or encouraging purchasers of any such certificates from instituting suits against appellant in any court, and that all matters be determined in this action, etc.

"To this petition are attached as exhibits the contracts alleged therein.

"Appellees all answered.

"At a regular term of the court thereafter the appellees, Woodards and Garrett, and their lawyers, Thurmond & Crockett, moved to dissolve said injunction because there is no equity in plaintiff's petition, and adopted the motion of defendants Barker and Baughn to dissolve, based on the pendency of a suit in the County Court of Palo Pinto County, appealable to the Court of Civil Appeals.

"Defendants Woodards and Garrett filed amended motion to dissolve because the court had no jurisdiction to try the case because of the amount involved, and because the court has no authority to enjoin the Justice of the Peace Courts or County Courts of the State.

"On hearing, the suit as to the defendant Baughn was dismissed by appellant, and the court sustained the general demurrer of the defendants Garrett, Woodards, Crockett and Thurmond and dismissed those defendants from the case, and then adjudged that as the amount in controversy between the other defendants and appellant was only $240, that the court had no jurisdiction as to them, and dismissed the injunction as to them. Appellant promptly excepted, gave notice of appeal, and has perfected appeal to this court."

Appellant first insists that his petition is maintainable on the ground of preventing a multiplicity of suits to which his petition shows a perfect defense and as against which there is no adequate protection except by injunction. It is not to be doubted that in this State, in a proper case, the District Court may issue an injunction to prevent a multiplicity of suits. See Galveston, H. & S. A. Ry. v. Dowe, 70 Texas, 5-6; Aimee Realty Co. v. Haller, 106 S. W., 589; Steger & Sons Piano Mfg. Co. v. MacMaster, 51 Texas Civ. App., 527 (113 S. W., 337). These are all cases, however, in which the multiplied suits sought to be enjoined had been instituted or were threatened by persons claiming in a single right separate causes of action arising from the same source. Not so here, however. The petition fails to show any community of right in appellees. It is said in a note, supported by numerous authorities, on page 767 of 22 Cyc., that: "The mere fact that numerous independent parties hold separate instruments upon which there might be separate suits is not sufficient to justify the court of equity in entertaining an action by the debtor to compel them to litigate their claims in an action

in the forum he selects. And this even though the validity of all those instruments is attacked upon a common ground." This principle it seems to us is applicable here.

Moreover, the contract made by appellant with Garrett, and which is attached as an exhibit to the petition, undoubtedly authorized Garrett to sell lots in the addition to which the contract relates. By the terms of this contract it is specifically provided that "whenever the purchase price of a lot as per schedule attached has been paid, then said Hamner is to make a general warranty deed to the purchaser thereof." The only persons named in the petition who have or are threatening to institute suits under this branch of appellant's case are the appellees McCoun, Keith and Sandusky. The petition shows that these parties claim to have purchased and fully paid for the lots claimed by them, and these averments are not specifically denied. Neither of these appellees is interested in the controversy of the other, and the suit of either, if well founded, may be easily met by the execution of deeds to them as appellant obligated himself to do.

Nor do the claims of all aggregate an amount within the jurisdiction of the District Court. The only persons actually named who have instituted suits or are threatening to institute suits because of misrepresentations made in sales of certificates under the Oklahoma plan, were the defendants Barker and Baughn, as to whom appellant dismissed his suit. Manifestly, no injunction could issue as sought against unknown persons not made parties to the suit. Watkins Land Co. v. Clements, 98 Texas, 578. It is likewise manifest, we think, that the causes of action asserted by these several classes of purchasers are wholly dissimilar in character and dependent upon different state of facts, one class arising *ex contractu,* the other *ex delicto,* which generally can not be joined. See Frey v. Fort Worth & Rio Grande Ry. Co., 86 Texas, 465; U. S. Fidelity & Guaranty Co. v. Fossati, 97 Texas, 497, and authorities therein cited.

As to the appellees Garrett and J. W. and J. H. Woodard the petition, aside from mere legal conclusions, is altogether too indefinite to show a cause of action. The petition fails to show that either of these appellees is asserting any rights by virtue of the contracts made by them, and it appears from the petition, though not perhaps from the statement quoted, that early in May, 1907, appellant was informed of the published representation that he was a partner with said appellees, but that during the same month appellant repudiated the relation, and the petition fails to aver that after such repudiation appellees or any one of them continued to represent him as a partner or, if so, no person other than those as to whom the suit was dismissed is named who was misled by the misrepresentation. It is averred that thereafter appellees represented that the associate of appellee and the Woodards was a corporation and that appellant was its president, but this certainly can not be actionable, it not appearing that any one was or could be misled thereby, or that any ascertainable sum in the way of damages is stated so as to afford any intelligent basis for relief.

Appellant insists that his petition shows a right to the remedy of injunction upon the equitable doctrine of discovery. But in so far as it was necessary on appellant's part to this relief an exercise of his legal right to examine opposing parties as witnesses, given by Revised Statutes, article 2293, would have given him all the information as to the 'names, amounts, etc., relating to the sales of lots or certificates by the defendants Garrett or either of the Woodards that could be obtained under the equitable rules relating to discovery. Because of this statute, the doctrine of discovery, after full discussion of the authorities, is declared to have no application under our system of procedure. Love v. Keowne, 58 Texas, 191; Gouhenant v. Anderson, 20 Texas, 460; Cargill & Dennis v. Kountze, 86 Texas, 400.

The fundamental proposition that the judgment was rendered at a term of court held at a time unauthorized by law, seems to be fully. . answered by the construction of the Act of February 3, 1909 (General Laws 1909, page 10), given in the cases of Bowden v.. Crawford, 103 Texas, 181; Freeman v. Taylor, 61 Texas Civ. App., 393 (125 S. W., 613), and Nobles v. State, 123 S. W., 126.

We conclude that no error was committed in sustaining the general demurrer to appellant's petition and dissolving the injunction.

The judgment is accordingly affirmed.

*Affirmed.*