**MISSOURI, K. & T. RY. CO. OF TEXAS et al. v. MOSS.**

(Court of Civil Appeals of Texas.   Feb. 15, 1911.   Rehearing Denied March 22, 1911.)

1. EVIDENCE (§ 543*)—OPINION EVIDENCE—MARKET VALUE — COMPETENCY OF WITNESSES.

Witnesses were competent to testify to the market value of cattle at the time and in the condition they arrived at a particular place, where they were shown to be experienced cattlemen who frequently shipped cattle thereto, and to be acquainted with the market value at such place of such cattle as those in question, which were shipped for pasture and not for sale till the succeeding season.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2356½–2358; Dec. Dig. § 543.*]

2. CARRIERS (§ 228*) — SHIPMENT OF LIVE STOCK—SUIT FOR DAMAGES—EVIDENCE.

In an action against carriers for delay and rough handling of a shipment of cattle, evidence *held* sufficient to show that the cattle, in the condition in which they were when they arrived at their destination, had a market value at such time and place.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 960; Dec. Dig. § 228.*]

3. EVIDENCE (§ 117*) — RELEVANCY WHERE NOT FOLLOWED BY OTHER EVIDENCE.

In a suit for damages to a shipment of cattle, a question to witnesses for plaintiff as to what the cattle would have been worth at their destination but for their damaged condition was proper, though not followed up by proof showing the extent of damages, where cattle were shipped within a reasonable time and with ordinary care; that being a proper subject for cross-examination if it was desired to show that without negligence there is some injury to every shipment of cattle.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 136; Dec. Dig. § 117.*]

4. NEGLIGENCE (§ 4*)—DEFINITION OF "ORDINARY CARE."

An instruction defining "ordinary care" to be that degree of care, precaution, or diligence which may properly be expected or required, having regard to the nature of the action and circumstances surrounding the transaction, is correct.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 6; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 6, pp. 5029–5042; vol. 8, pp. 7739, 7740.]

5. CARRIERS (§ 228*)—SUIT FOR INJURIES TO LIVE STOCK — EVIDENCE — DAMAGES — ITEM FOR DELAY.

In a suit against carriers of live stock, *held* that, under the evidence, there was sufficient proof of an item of damages sued for as a feed bill made necessary by delay.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 960; Dec. Dig. § 228.*]

Appeal from Llano County Court; A. H. Wilbern, Judge.

Action by M. M. Moss against the Missouri, Kansas & Texas Railway Company of Texas and others. From a judgment for plaintiff, the defendant railway company named and another of the defendants appeal. Affirmed.

Fiset & McClendon, for appellants. Slator & Oatman, for appellee.

RICE, J.   Appellee brought this suit against the Missouri, Kansas & Texas Railway Company of Texas, the Missouri, Kansas & Texas Railway Company, and the Houston & Texas Central Railroad Company, to recover damages alleged to have been sustained on account of delay and rough handling to a shipment of 175 head of steer yearlings, which were shipped on the 17th day of April, 1909, from Llano, Tex., to Wynona, Okl.

All of the defendants answered, the first two by general denial; but it is unnecessary to state the pleadings of the latter, for the reason that no evidence was offered showing any liability on its part, and the court peremptorily instructed the jury to return a verdict in its favor, of which no complaint is made.

There was a jury trial, resulting in a verdict and judgment in favor of plaintiff as against the Missouri, Kansas & Texas Railway Company of Texas for $247, and against the Missouri, Kansas & Texas Railway Company for $210, with interest on said respective amounts from the 20th day of April, 1909, from which this appeal is prosecuted.

The first two assignments question the action of the court in permitting plaintiff and his witness Ed Moss to state that the market value of 138 head of these cattle at the time and in the condition they arrived at Wynona was from $18 to $19 per head, because, as they claim, said witnesses had not qualified as knowing the market value of said cattle, and the evidence was not sufficient to show that said cattle had a market value at said time and place in said condition; and, further, because said testimony was incompetent, irrelevant, and immaterial. The record shows that each of these witnesses was an experienced cattleman, who frequently shipped cattle from Llano to Oklahoma; that while these cattle had been shipped to said point for the purpose of being placed upon pasture, still that they were acquainted with the market value of such cattle as these at Wynona, which were shipped there for pasture and not for sale until the succeeding season, because there were cattle buyers there who bought and sold such stock. Whenever a party wanted to sell such cattle, there was always some one there ready to buy them; that there was more or less trafficking going on there among stockmen in stock cattle at that time of the year. In addition to this the witness Ed Moss testified that he knew of several sales of cattle during that spring at Wynona. Each of said witnesses testified that they predicated their opinion upon conversations with other stockmen as to the value of such cattle at said season of the year, as well as their own knowledge of values; and Ed Moss testified in addition that his opinion was also based upon certain sales of stock cattle at Wynona during said season.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

We think this evidence was competent and properly admitted. Discussing how market value may be shown, it is said in volume 13, Ency. Ev. p. 512, that "such value is shown by the proof of the price paid in the usual course of business for property of the same quality as that in issue at or near the time in question, and at or near the place with reference to which the parties contracted, or where, in case of tort, the wrong was done." It was held in Gulf, Colorado & Santa Fé Ry. Co. v. Russell, 23 S. W. 528, that "market value, at a given time and place, may be proven by evidence of actual sales of like property. Evidence of a single sale is admissible, but not alone sufficient to establish market value." It is also held in St. Louis, B. & M. Ry. Co. v. Droddy, 132 S. W. 946, that, "while a single sale may not make a market, it does not require a great number to give market value to property in a certain locality." In our judgment it is not always necessary to show that a thing has an established standard of value in the open market, such as a bale of cotton or other staple commodity, before it can be truly said to have a market value. If, as in the present case, animals similar to the ones in question were bought and sold during said time at Wynona, and that parties there were always willing to purchase at the prevailing prices, then it would seem that there was a market value for such cattle, notwithstanding there may not have been extensive dealings in such cattle. Here several sales were proven of such stock as these; it appearing that there was considerable trafficking in such cattle during said spring at said place. See Gulf, Colorado & Santa Fé Ry. Co. v. Peacock, 128 S. W. 463; Freeman v. Taylor, 130 S. W. 733. While stock cattle like these probably had no market value in the cattle markets of the country, such as Ft. Worth, St. Louis, or Kansas City, still, where it is shown that they did have a market value at other places, such as Wynona (witnesses having testified to certain sales of such cattle and frequent trafficking therein), this, it sems, would be sufficient to meet the requirements of the law in this respect. The question here presented is, we think, dissimilar from the one presented in the case of M., K. & T. Ry. Co. v. Crews, 120 S. W. 1110, relied on by appellants. In that case it was sought to prove what the animals were worth to the plaintiff, and it was held that before this could be permitted it must appear that the animals not only did not have a market value at the place of injury, but it must also be shown that they did not have an intrinsic value as well. We are therefore constrained to believe that these assignments should be overruled.

What has just been said, we think, disposes of the questions raised by the first proposition under the third and fourth assignments of error. By their second proposition under these assignments, appellants contend that the testimony complained of was subject to the further objection that it was incompetent, irrelevant, and immaterial, in that it did not embrace the proper measure of plaintiff's damage in this: The uncontroverted evidence, it is claimed, showed that in a journey of that length, even under the most favorable circumstances, there is necessarily some injury to the cattle. And the question as to what the cattle would have been worth but for their damaged condition could have no probative force in establishing the plaintiff's damage, unless it was followed up by further proof, showing the extent of damage where the cattle were shipped within a reasonable time with ordinary care. We think the question was proper, and if appellants desired to show that there is some injury to every shipment, in the absence of negligence, and that such fact should be considered by the jury, it seems to us that it was a proper subject of cross-examination by them.

The court gave the following charge: "Ordinary care is that degree of care, precaution, or diligence which may properly be expected or required, having regard to the nature of the action and the circumstances surrounding the transaction." This forms the basis of the ninth assignment and is complained of as error. A charge exactly similar to the one under consideration was passed on in the case of H. & T. C. R. R. Co. v. Roberts, 50 Tex. Civ. App. 69, 109 S. W. 982, and while not expressly commended, was held not to be error, for which reason this assignment is overruled.

Appellants complain that the verdict, at least to the amount of $10, is excessive, urging that there was no testimony to support an item of $10 sued for as a feed bill, made necessary by delay. Plaintiff itemized his damage as follows: 9 head of cattle which died, $189; 166 head damaged $2 per head, $332; extra feed bill, made necessary by delays, $10; total, $531. The evidence shows that the cattle were shipped in four cars. There was no damage claimed as to one car. As to the remaining three cars, 9 head of cattle died, leaving 129 head. The evidence authorized fixing the value of the nine head at $21 each, and damages to the remaining 129 at $2 each, which would total $447. The verdict and judgment was for $457. If the $10 item for the feed bill is added, the verdict is sustained by the proof. Plaintiff sued for this extra feed bill made necessary by the delays, which was itemized in his petition with the other items of damage, and he testified that the claim sued on was owned by him; that the same as itemized in his petition was all due and owing to him. We think his testimony, taken in connection with the itemized statement of his claim, in the absence of a specific objection, was sufficient proof thereof, for which reason we overrule this assignment.

The remaining assignments have been considered, and are overruled. Finding no error in the judgment, the same is affirmed.

Affirmed.